**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| WATER PROFESSIONALS INTERNATIONAL<br>9400 Plum Drive, Suite 160<br>Urbandale, IA 50322<br><br>Plaintiff,<br><br>v.<br><br>JOHN MCGINNIS<br>4180 Plymouth Road<br>Cleveland, OH 44109<br><br>and<br><br>NORTHEAST OHIO REGIONAL<br>SEWER DISTRICT<br>Serve: Kyle Dreyfuss-Wells<br>McMonagle Administrative Building<br>3900 Euclid Avenue<br>Cleveland, OH 44115<br><br>Defendants. | CASE NO.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

For its complaint against Defendants John McGinnis ("McGinnis") and the Northeast Ohio Regional Sewer District (the "District") (collectively "Defendants"), Plaintiff Water Professionals International ("WPI" or "Plaintiff"), by its undersigned attorneys, alleges as follows:

**PARTIES**

1. Water Professionals International is a nonprofit corporation incorporated under the laws of the State of Iowa with its principal place of business in Urbandale, Iowa.

2. Defendant John McGinnis is an individual that upon information and belief is a resident and citizen of the State of Ohio.

3. Defendant Northeast Ohio Regional Sewer District is a public utility district that serves most of Cuyahoga County and a portion of Summit and Lorain Counties in the State of Ohio by, among other things, managing wastewater treatment facilities and the interceptor sewers in those areas.

**JURISDICTION AND VENUE**

4. The Court has subject matter jurisdiction over the case under the United States Copyright Act and the Defend Trade Secrets Act ("DTSA"). *See* 17 U.S.C. § 501, 18 U.S.C. §1836 and 28 U.S.C. §§ 1331 and 1338.

5. Personal jurisdiction and venue are proper in this Court as upon information and belief, Defendants are residents of this district and the copyright infringements and trade secret violations that are the subject of this Complaint took place within this district.

6. Accordingly, venue properly lies with this Court pursuant to 28 U.S.C. §1391 as a substantial part of the events or omissions giving rise to the claims at issue in this litigation occurred in this judicial district.

**FACTS**

7. WPI (formerly known as the Association of Boards of Certification) is a non-profit organization that has been the central water industry authority that ensures that water and wastewater professionals are prepared to meet the standards that their communities can trust through its testing and certification services.

8. WPI provides certification services in numerous states throughout the United States, and the examination questions are used in connection with products and services utilized in interstate commerce.

9. WPI has assisted in the certification of more than 500,000 water and wastewater treatment professionals, including those who have earned a WPI Certification and/or Professional Operator (PO) Certification.

10. The certification process, which includes the examinations that WPI offers, is incredibly important because it ensures that the people making critical decisions that involve the protection of public health and the environment have the requisite knowledge and experience to make those decisions.

11. Specifically, WPI offers standardized and customized certification exams across four progressive levels (Class I through Class IV) in the categories of water treatment, water distribution, wastewater collection, wastewater treatment, biological and physical/chemical industrial waste, backflow prevention assembly testing, water/wastewater laboratory, biosolids land application, and plant maintenance.

12. WPI expends significant human and financial resources writing and creating its own exams for the certification process.

13. Writing effective exam questions involves WPI's unique institutional knowledge and creative decision-making—how to phrase a question, which facts or scenarios to use, what distractors to include in a multiple-choice question, and how to structure an essay prompt.

14. As such, WPI's exams go through a rigorous psychometric process to ensure they are fair, valid, and legally defensible.

15. WPI—under its prior name (Association of Boards of Certification)—used its own institutional knowledge, creative decision-making, human capital, and financial resources to create the ABC Wastewater Treatment Class IV Standard Examination (the "Standard Examination")

and the ABC Wastewater Treatment Item Bank (the "Item Bank"), which date back to the 1980s, but were assembled into the 2013 version of the examination in 2012-13.

16. WPI has offered different versions of its examinations over the years and there are 2013, 2017, 2019, and 2025 versions of its examinations on a variety of subjects that are currently being utilized by the State of Ohio, as well as many other states.

17. The Standard Examination and Item Bank are valuable to WPI because they form the foundation of the questions WPI uses in those various versions of its exam.

18. WPI completed and first published the Standard Examination and Item Bank in 2011.

19. Under WPI's prior name, Association of Boards of Certification, WPI copyrighted the Standard Examination on May 7, 2013, with a registration number of TX 7-794-429, and it copyrighted the Item Bank on May 7, 2013 with a registration number of TXu 1-884-331 (collectively the "Registered Works"). Attached as **Exhibits A** and **B** are true and accurate copies of WPI's registration for the Registered Works.

20. The copyrighted content appearing in the 2017, 2019 and 2025 examinations was copied from, derived from, or contains questions included in the Registered Works.

21. Since the registration of the Registered Works, the Association of Boards of Certification transferred ownership of the Registered Works in writing to WPI.

22. Since that time, WPI has been and still is, the sole author and exclusive holder of all rights, title, and interest in and to the copyrights contained in the Registered Works.

23. McGinnis works as the Plant Operations Lead Instructor for the District.

24. Beginning in 2022, McGinnis also worked as a volunteer for WPI and served on several of WPI's committees, including those focused on exam development and exam review.

25. As part of his volunteer service, McGinnis signed a non-disclosure agreement with WPI whereby he acknowledged the confidentiality of the Registered Works and agreed to not publicly share their contents.

26. McGinnis has been infringing Plaintiff's copyrighted material.

27. Specifically, McGinnis has posted study materials, calculations, and exam cheat sheets on a Google Drive titled Wastewater Info, previously available at https://drive.google.com/drive/folders/1FCcqfjpBKqUqd4_yfoPOuS8_EbAyB319 (the "Google Drive").

28. Upon information and belief, McGinnis created the Google Drive on or around October 9, 2023.

29. McGinnis created and owned the Google Drive using the email "johnmcginnisjr@gmail.com."

30. The Google Drive contained at least ten folders, including folders titled as "American Water College", "Cheat Sheets", "Quizzes", and "WPI & OEPA Info." A screenshot of the Google Drive is attached below as **Exhibit C**.



31. The Google Drive and the above referenced folders included 93 actual exam questions from the 2017 Examination (the “2017 Exam”), 98 questions from the 2019 Examination (the “2019 Exam”), and 67 questions that also appeared on the 2025 Wastewater Treatment Exam (the “2025 Exam”).

32. The 2013, 2017, 2019, and 2025 Exams all contain questions that are part of the Registered Works and therefore, entitled to copyright protection.

33. McGinnis made the Google Drive publicly available for an extended period of time.

34. Additionally, McGinnis repeatedly promoted the Google Drive and its contents on Reddit, a massive online social media platform and forum network, often during work hours.

35. Specifically, McGinnis utilized the Reddit username “DirtyWaterDaddyMack.”

36. In one post, sometime in or around 2024, McGinnis provided three “practice questions” and a link to the Google Drive. A screenshot of that post is attached as **Exhibit D**.

37. As a result of McGinnis’s posting and promotion of the Google Drive, thousands of users accessed, reviewed, and benefited from the unauthorized use of the Registered Works.

38. As one illustrative example, a Reddit user posted earlier in 2026, “u/DirtyWaterDaddyMack’s google drive was a huge help, especially the Talking Shop folder.” A true and accurate copy of that post is attached below as **Exhibit E**.



**Scoutfat** OP • 5mo ago

There's so many individuals putting in the work to provide knowledge online so my thanks goes to them. u/DirtyWaterDaddyMack 's google drive was a huge help, especially the Talking Shop folder.

My plant doesnt have anaerobic digesters or trickling filters so I focused most of my studying towards that. I'm not a fan of T/F questions so I stumbled on those a bit. My advice would be to not overthink them.

1 Reply Award Share ···

39. As part of his job as Plant Operations Lead Instructor for the District, McGinnis was responsible for preparing the District's employees for these wastewater examinations that are prepared by WPI and administered by the Ohio Environmental Protection Agency (the "Ohio EPA").

40. In addition to serving the public interest by providing clean and safe water, there is value for the District in having its employees legitimately pass the examinations because, among other things, it ensures the competency of its employees, which minimizes risk to the District.

41. Water and wastewater facilities are typically classified into tiers (often Class I through Class IV) based on factors like plant size, treatment complexity, population served, and treatment processes used.

42. Each facility in the District needs to have a certified operator qualified at the same level of the facility to act as the operator in charge or Direct Responsible Operator per shift. For example, a Class III facility cannot be operated by someone who only holds a Class I or Class II certification. It can be difficult at times to find someone who is credentialed at this level.

43. Operating a wastewater facility in Ohio without a designated Professional Operator of Record (often referred to as the Operator in Responsible Charge or DRC/ORC equivalent) without the required level of certification is a violation of Ohio Administrative Code Chapter 3745-7. Failure to have a Professional Operator of Record can result in civil penalties issued by the Ohio EPA of up to $10,000 per day of violation.

44. During the course of his employment, McGinnis improperly infringed the Registered Works by distributing them to the District's employees to assist with their preparation for the examinations.

45. Through his conduct of exposing the actual examination questions to the public and to the District's employees in particular, McGinnis's actions not only infringe on WPI's copyrighted material but put public health and the environment in jeopardy because it undoubtedly has resulted in unqualified or underqualified individuals obtaining WPI's certification.

46. Because of the value of the certification, unqualified or underqualified individuals that only passed the examinations because they were given the questions in advance are now likely in positions to make decisions that could have disastrous effects in their respective communities.

47. Additionally, as a result of McGinnis's exposure of the examination questions, including but not limited to the Registered Works, to the public, WPI must hire an outside vendor to develop a new examination with entirely new questions, which is a significant cost, potentially exceeding $500,000.00, that WPI would not have otherwise been forced to incur absent McGinnis's actions.

48. As McGinnis's employer, the District had the right and ability to supervise McGinnis's activities, including but not limited to the materials that he was utilizing to help the District's employees prepare for their examinations and the fact he was posting WPI's copyrighted materials online during work hours. The District also had a direct financial interest in his work.

49. Neither McGinnis nor the District were licensed or authorized by WPI to use any of the Registered Works in any way.

50. Although the Google Drive was publicly accessible for an extended period of time, it was made private after WPI discovered the infringement. Upon information and belief, the contents of the Google Drive remain available to third parties through requests for access submitted to McGinnis as owner of the Google Drive.

**COUNT I: COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 101 *et seq.*)**

51. Plaintiff incorporates Paragraphs 1-50 as though fully set forth herein.

52. This action is for copyright infringement against Defendants based on Defendants' infringement of the Registered Works.

53. Defendants copied, reproduced, distributed, and publicly displayed examination questions and other protected expression originating from or substantially derived from the Registered Works.

54. WPI is the true, rightful, and sole owner of the copyrights in the Registered Works.

55. McGinnis had access to the Registered Works through his volunteer work with WPI.

56. McGinnis had actual notice of WPI's exclusive rights in and to the Registered Works through his volunteer work with WPI and his signing of a non-disclosure agreement.

57. McGinnis did not have WPI's consent or authorization to use, reproduce, copy, display, distribute, and/or transfer the Registered Works.

58. McGinnis knowingly and willfully infringed on the Registered Works by posting examination questions on his Google Drive that were available to the public, as well as by disseminating the Registered Works to the District's employees to assist with their preparation as part of his role as the District's Plant Operations Lead Instructor.

59. McGinnis's name and email address (that he used for his Professional Operator application and personal volunteer use through WPI) was readily available within documents contained in the Google Drive, leaving no doubt as to the identity of the infringer. The drive was also "owned" by the same email address.

60. The District is vicariously liable for McGinnis's actions because, as his employer, it had the right and ability to supervise his actions, including but not limited to being aware of and supervising the materials that he was using to help his fellow employees prepare for their examinations, as well as because he was posting this information online during work hours.

61. The District also had a direct financial interest in McGinnis's actions in order to ensure its compliance with Ohio's administrative regulations, as well as reducing additional costs that would be incurred in having its employees take the tests multiple times, forcing the employees to be unavailable for work during the times in which they would be studying and/or taking the exams.

62. WPI is entitled to an injunction (a) restraining Defendants and all persons acting in concert with them, from engaging in further such acts in violation of the copyright laws, and (b) requiring Defendants to disclose and then destroy all of WPI's copyrighted materials in their possession.

63. As a direct result of Defendants' infringement, WPI has sustained and continues to sustain damages in an amount exceeding $500,000.00.

64. Pursuant to 17 U.S.C. §§ 502, 503, 504, and 505, WPI is entitled to an award of actual damages, injunctive relief, the impoundment and destruction of the infringing materials, and its attorney's fees and costs against Defendants.

65. In addition, WPI is entitled to statutory damages for the infringement and willful infringement of the Registered Works.

**WHEREFORE**, Plaintiff, by counsel, respectfully requests that this Court enter judgment against Defendants; and

a) Permanently enjoin and restrain Defendants, their officers, agents, employees, representatives, and all others acting in concert or participation with any of them from directly or indirectly infringing or causing, enabling, facilitating, encouraging, promoting, inducing, and/or participating in the infringement of any of WPI's rights protected by the Copyright Act;

b) An award of damages under 17 U.S.C. §504(b), including actual damages exceeding $500,000.00 and Defendants' profits in an amount to be proven at trial;

c) An award of statutory damages;

d) An award of attorney's fees;

e) For pre-judgment and post-judgment interest; and

f) Award WPI such further and additional relief as this Court deems just and proper.

**COUNT II: VIOLATION OF THE OHIO UNIFORM TRADE SECRETS ACT**
**(Ohio Rev. Code Ann. 1333.61 *et seq.)***

66. Plaintiff incorporates Paragraphs 1-65 as though fully set forth herein.

67. The trade secrets at issue include WPI's confidential examination item bank, unpublished examination questions and answer choices, examination forms, examination-development materials, test construction methodologies, and related psychometric and validation information. These materials derive independent economic value from not being generally known and are the subject of reasonable measures to maintain secrecy.

68. Specifically, the examination questions have economic value because most states utilize WPI's exams as part of their certification process. WPI is paid by state and environmental certifying agencies, as well as the candidates themselves, for exam administration and validation services.

69. Furthermore, WPI has paid an outside vendor substantial sums of money to develop the examinations, ensuring that they are psychometrically sound and therefore, accurately measure the knowledge of the individuals taking the tests.

70. The economic value to WPI relies upon the secrecy and security of the examination questions because if they are made public, it undermines the integrity of the examination and the certifications that result therefrom. If the questions are publicly available, the results become meaningless and unqualified individuals may be put in positions to make decisions they are not equipped to make. This could have a catastrophic impact on public health systems and the environment, which is exactly what the examinations are designed to avoid.

71. As a result of Defendants' actions, WPI must hire a vendor to develop an entirely new exam with entirely new questions, which will be prohibitively expensive, potentially exceeding $500,000.00, and is a cost that it would not otherwise have had to incur.

72. WPI also has taken extensive measures to safeguard the secrecy and security of its examination questions by requiring all of its employees and volunteers to sign non-disclosure agreements, conducting its work in closed environments that are password protected with limited access to only those expressly granted permission, and by having a firewall on its server. There are also additional protections by the Ohio EPA and the external administrator of the exams to safeguard the secrecy of the examination questions.

73. When he first began working with WPI as a volunteer and serving on its committees, during which time he was potentially exposed to the examination questions, McGinnis signed a non-disclosure agreement that he violated when he disclosed WPI's examination questions to the public.

74. Upon information and belief, McGinnis acquired the examination questions either as a result of the confidential relationship that he had with WPI as a volunteer that required him to sign a non-disclosure agreement or through some other, unknown means that he knew or should have known were improper.

75. In either case, McGinnis improperly disclosed WPI's examination questions by publishing them on his Google Drive and on Reddit, as well as distributing them to the District's employees as part of his job as the District's Plant Operations Lead Instructor, where he was responsible for preparing the District's employees to take WPI's certification exams.

76. As the examination questions constitute trade secrets, he was acting within the scope of his employment with the District when he misappropriated WPI's trade secrets.

77. Accordingly, the District is vicariously liable for McGinnis's violation of the Ohio Uniform Trade Secrets Act.

78. McGinnis disclosed WPI's trade secrets without the express or implied consent of WPI.

79. At the time of his disclosure of the examination questions, McGinnis knew or should have known that they were trade secrets that should not be disclosed, yet he did it anyway.

80. At this time, WPI believes that McGinnis misappropriated 93 exam questions from the 2017 Exam, 98 questions from the 2019 Exam, and 67 questions from the 2025 Exam.

81. Under the Ohio Revised Code, WPI is entitled to an injunction (a) restraining Defendants and all persons acting in concert with them, from engaging in further misappropriation of WPI's trade secrets, and (b) requiring Defendants to disclose and then destroy all of WPI's trade secrets in their possession. R.C. 1333.62.

82. Under the Ohio Revised Code, WPI is entitled to its actual damages caused by Defendants' misappropriation and/or the unjust enrichment caused by the misappropriation. R.C. 1333.63.

83. In addition to the fact that Defendants' misappropriation of WPI's trade secrets was willful and malicious, their conduct is especially reprehensible given they knew or should have known the potentially catastrophic effect that it can have on public health and the environment because it can or has already directly led to the certification of unqualified or underqualified individuals in critical wastewater positions. As the violation was willful and malicious, WPI is also entitled to treble damages, as well as an award of punitive damages.

84. WPI is also entitled to an award of its reasonable attorney's fees because Defendants' misappropriation of WPI's trade secrets was willful and malicious. R.C. 1333.64.

**WHEREFORE**, Plaintiff, by counsel, respectfully requests that this Court enter judgment against Defendants; and

a) Permanently enjoin and restrain Defendants, their officers, agents, employees, representatives, and all others acting in concert or participation with any of them from misappropriating WPI's trade secrets as set forth in R.C. 1333.62;

b) An award of actual damages in an amount exceeding $500,000.00, to be proven at trial;

c) An award of treble WPI's actual damages caused by Defendants' misappropriation and/or the unjust enrichment caused by the misappropriation under R.C. 1333.63.

d) An award of reasonable attorney's fees under R.C. 1333.64;

e) For pre-judgment and post-judgment interest; and

f) Award WPI such further and additional relief as this Court deems just and proper.

**COUNT III: VIOLATION OF THE DEFEND TRADE SECRETS ACT**
**(18 U.S.C. §1836)**

85. Plaintiff incorporates Paragraphs 1-84 as though fully set forth herein.

86. The trade secrets at issue include WPI's confidential examination item bank, unpublished examination questions and answer choices, examination forms, examination-development materials, test construction methodologies, and related psychometric and validation information. These materials derive independent economic value from not being generally known and are the subject of reasonable measures to maintain secrecy.

87. Specifically, the examination questions have economic value because most states utilize WPI's exams as part of their certification process. WPI is paid by state and environmental certifying agencies, as well as the candidates themselves, for exam administration and validation services.

88. Furthermore, WPI has paid an outside vendor substantial sums of money to develop the examinations, ensuring that they are psychometrically sound and therefore, accurately measure the knowledge of the individuals taking the tests.

89. The economic value to WPI relies upon the secrecy and security of the examination questions because if they are made public, it undermines the integrity of the examination and the certifications that result therefrom. If the questions are publicly available, the results become meaningless and unqualified individuals may be put in positions to make decisions they are not equipped to make. This could have a catastrophic impact on public health systems and the environment, which is exactly what the examinations are designed to avoid.

90. As a result of Defendants' actions, WPI must hire a vendor to develop an entirely new exam with entirely new questions, which will be prohibitively expensive, potentially exceeding $500,000.00, and is a cost that it would not otherwise have had to incur.

91. WPI also has taken extensive measures to safeguard the secrecy and security of its examination questions by requiring all of its employees and volunteers to sign non-disclosure agreements, conducting its work in closed environments that are password protected with limited access to only those expressly granted permission, and by having a firewall on its server. There are also additional protections by the Ohio EPA and the external administrator of the exams to safeguard the secrecy of the examination questions.

92. When he first began working with WPI as a volunteer and serving on its committees, during which time he was potentially exposed to the examination questions, McGinnis signed a non-disclosure agreement that he violated when he disclosed WPI's examination questions to the public.

93. Upon information and belief, McGinnis acquired the examination questions either as a result of the confidential relationship that he had with WPI as a volunteer that required him to sign a non-disclosure agreement or through some other, unknown means that he knew or should have known were improper.

94. In either case, McGinnis improperly disclosed WPI's examination questions by publishing them on his Google Drive and on Reddit, as well as distributing them to the District's employees as part of his job as the District's Plant Operations Lead Instructor, where he was responsible for preparing the District's employees to take WPI's certification exams.

95. As the examination questions constitute trade secrets, he was acting within the scope of his employment with the District when he misappropriated WPI's trade secrets.

96. Accordingly, the District is vicariously liable for McGinnis's DTSA violation.

97. McGinnis disclosed WPI's trade secrets without its express or implied consent.

98. At the time of his disclosure of the examination questions, McGinnis knew or should have known that they were trade secrets that should not be disclosed, yet he did it anyway.

99. At this time, WPI believes that McGinnis misappropriated 93 exam questions from the 2017 Exam, 98 questions from the 2019 Exam, and 67 questions from the 2025 Exam.

100. Under the DTSA, WPI is entitled to an injunction (a) restraining Defendants and all persons acting in concert with them, from engaging in further misappropriation of WPI's trade secrets, and (b) requiring Defendants to disclose and then destroy all of WPI's trade secrets in their possession. 18 U.S.C. §1836(b)(3)(A).

101. Under the DTSA, WPI is entitled to its actual damages caused by Defendants' misappropriation and/or the unjust enrichment caused by the misappropriation. 18 U.S.C. §1836(b)(3)(B).

102. In addition to the fact that Defendants' misappropriation of WPI's trade secrets was willful and malicious, their conduct is especially reprehensible given they knew or should have known the potentially catastrophic effect that it can have on public health and the environment because it can or has already directly led to the certification of unqualified or underqualified individuals in critical wastewater positions. As the violation was willful and malicious, WPI is also entitled to double damages.

103. WPI is also entitled to an award of its reasonable attorney's fees because Defendants' misappropriation of WPI's trade secrets was willful and malicious. 18 U.S.C. §1836(b)(3)(D).

**WHEREFORE**, Plaintiff, by counsel, respectfully requests that this Court enter judgment against Defendants; and

a) Permanently enjoin and restrain Defendants, their officers, agents, employees, representatives, and all others acting in concert or participation with any of them from misappropriating WPI's trade secrets as set forth in 18 U.S.C. §1836(b)(3)(A);

b) An award of actual damages in an amount exceeding $500,000.00, to be proven at trial;

c) An award of double WPI's actual damages caused by Defendants' misappropriation and/or the unjust enrichment caused by the misappropriation under §1836(b)(3)(B);

d) An award of reasonable attorney's fees under 18 U.S.C. §1836(b)(3)(D);

e) For pre-judgment and post-judgment interest; and

f) Award WPI such further and additional relief as this Court deems just and proper.

Dated: September 10, 2026

Respectfully submitted,

*/s/ Christopher C. Koehler*
Christopher C. Koehler (0059384)
Patrick J. Lipaj (0100129)
ckoehler@frantzward.com
plipaj@frantzward.com
FRANTZ WARD LLP
200 Public Square, Suite 3000
Cleveland, Ohio 44114
(216) 515-1660 (Telephone)
(216) 515-1650 (Fax)

*/s/ Michael J. Smith*
Michael J. Smith (*pro hac vice* anticipated)
GKG LAW, P.C.
1055 Thomas Jefferson St. NW
Suite 620
Washington, DC 20007
Telephone: 202-342-5235
Facsimile: 202-342-5219

*Attorneys for Plaintiff*
*Water Professionals International*

**JURY DEMAND**

Plaintiff Water Professionals International demands a jury trial pursuant to Fed. R. Civ. P. 38 as to all issues so triable in this action.

*/s/ Christopher C. Koehler*
Christopher C. Koehler

*Attorney for Plaintiff*
*Water Professionals International*